# EXHIBIT "A"



225 Broadway, Suite 1405
New York, New York 10007
T: (212) 385 0066 F: (212) 385 2117
www.dsblawny.com

William J. Dealy (1946-2012)
Milo Silberstein
Marc D. Braverman
Laurence J. Lebowitz

Maria Louisa Bianco
Amanda E. Maguire
Alexandra R. Elias

Jack Weinberg
Albert J. Soler
Of Counsel

April 11, 2019

**CONFIDENTIAL SETTLEMENT COMMUNICATION –
FOR SETTLEMENT PURPOSES ONLY**

**VIA EMAIL AND
FEDERAL EXPRESS**

Mr. Bob Rose
Executive Editor
Barron's Inc.
1211 Avenue of the Americas
New York, New York
Bob.rose@barrons.com

Re: **Harvey Kesner, plaintiff v. Barron's Inc., and Bill Alpert**
(Stories published by Barron's on September 10, 2018 and October 4, 2018)

Dear Mr. Rose:

This firm represents Harvey Kesner in connection with his substantial claims against Barron's arising out of the libelous stories published by Barron's on September 10, 2018 bearing the headline "SEC Charges Against Philip Frost May be Just the Tip of the Iceberg"[1] and on

---

[1] https://www.barrons.com/articles/sec-charges-phillip-frost-1536608366

October 4, 2018 bearing the headline, "The Lawyer at the Center of SEC Pump-and-Dump Case"[2] both written by Bill Alpert (the "Stories").

The Stories contain numerous statements that are false, fabricated and highly defamatory of Mr. Kesner, including a video taken in a hospital emergency room with a fictitious caption. The Stories are clearly calculated to wrongfully and unlawfully harm and destroy Mr. Kesner's reputation and business and have succeeded in doing so. Thus, the Stories constitute libel *per se*, among other things, and subject Barron's to significant monetary damages, including compensatory and punitive damages.

Mr. Kesner is an extremely prominent corporate and securities lawyer who has developed his reputation over thirty (30) years of practice, has worked at the United States Securities and Exchange Commission, as General Counsel to a New York Stock Exchange Company, and held senior executive positions with several publicly traded and privately held companies. Mr. Kesner, in his law practice which had borne his name, has represented dozens of investors, investment banks and businesses. His counselling has resulted in hundreds of millions of dollars raised for small and emerging businesses pursuing important matters as diverse as cancer research, alternative energy, medical devices and emerging technology. Mr. Kesner has earned the prominent "Super Lawyer" designation nearly every year in the past ten years of practice and had been respected by his peers, clients and partners alike as an effective counsellor and business attorney.

Barron's, on the other hand, has published a one-sided highly negative narrative in two parts based on allegations propounded by a single former client in litigation with Mr. Kesner and his firm. This is the first and only legal malpractice action against Mr. Kesner in over thirty years of practice. The Stories appear, for example, in search results for "Opko indictment", "Frost indictment" and "Honig indictment" (although there has been no indictments) as if somehow our client is the centerpiece to these matters as Barron's has reported. At the outset, Barron's reporting places our client as the driving force and centerpiece behind the SEC's and potentially the DOJ's actions against Dr. Philip Frost, a billionaire philanthropist and legendary investor, the company he founded (OPKO Health, Inc.), Barry Honig and others. **He is not.** Not only has our client never represented Dr. Frost, Opko or any of its officers or directors, he has represented parties adverse to them on numerous occasions. Mr. Kesner has represented Mr. Honig in disputes and in other matters, but also has represented parties adverse to him on occasions and in those instances, fully disclosed and obtained written conflict waivers.

Our client demands an immediate retraction of the Stories. Our client demands an apology. Our client demands full and fair compensation for the significant injuries suffered which, until publication of the libelous Stories, was untarnished.

Part I – The SEC Brings An Action Against Dr. Frost, OPKO and Others

According to the SEC, in a yet unproven case initially filed September 7, 2018 in the United States District Court for the Southern District of New York, as amended March 22, 2019 (No 1-18-CV-8075- ER)[3] Dr. Frost was one of 10 people and Opko one of 10 related

---

[2] https://www.barrons.com/articles/the-lawyer-at-the-center-of-sec-pump-and-dump-case-1538675403
[3] https://www.sec.gov/litigation/complaints/2019/comp24431.pdf

2

companies charged by the SEC over alleged "pump-and-dump" schemes. The people and companies were said to have manipulated three companies' stock prices from 2013 to 2018 and reaped $27 million in proceeds, according to the SEC. The three companies are known to have been Biozone Pharmaceuticals, Inc. ("Biozone"), MGT Capital Investments, Inc. ("MGT"), and MabVax Therapeutics, Inc. ("MabVax"). Mr. Kesner represented Biozone approximately five (5) years prior to the case, never represented MGT and was engaged for limited purposes as co-counsel to MabVax for select matters until shortly prior to the SEC filing. On March 22, 2019 the SEC announced settlements with many of the defendants, including Dr. Frost and Opko, "*without admitting or denying the SEC's allegations.*"[4] The SEC does not always get it right, especially where parties agree to settle based upon convenience, expediency or cost.

Barron's reporting on our client's relationship to these matters reads like a trashy novel full of speculation and conjecture. The SEC's headline grabbing promotion of its investigation and actions is one thing. Barron's libelous insertion of our client into the narrative as the lynchpin without any factual support is an entirely different matter.

Our client is unnamed in the SEC's lawsuit and the SEC has not alleged he had knowledge of or participated in any wrongdoing. Furthermore, Barron's failed to fact check the most rudimentary of claims it made and repeated in its reporting on a frivolous California lawsuit filed in September 2018. Barron's coverage is factually unsupportable[5]. No obligation by any investor in MabVax's April 2015 financing appears anywhere in any document, all of which are of public record on file with the SEC. That did not stop Barron's from its libelous reporting. All the documents used for the investment explicitly state that all prior drafts, term sheets and proposals are superseded. Most importantly, Barron's assertion that an investor named Honig forced MabVax to hire Kesner is belied by the facts. Neither Mr. Honig nor an alleged associate identified as Mr. Stetson invested in that offering. Dr. Frost/Opko invested $2.5 million. Our client has no relationship whatsoever with Dr. Frost/Opko other than having met him socially on several occasions, and Dr. Frost never required or suggested our client be hired by MabVax. It is unsurprising that MabVax's complaint falsely alleges that our client be hired, but that will be responded to in due course of that proceeding. Being stated as fact by Barron's with the other libelous statements associated with that claim is unacceptable and defamatory.

Barron's relies on persons with questionable motives – its own reporter Bill Alpert and a blogger applauded by Mr. Alpert named Teri Buhl. Even a cursory review of Teri Buhl, a self-proclaimed investigative blogger who has spent time in jail for violating a court imposed order against violating a child's privacy, (purported to be the daughter of a man she dated), would show that she is notorious not only for inaccuracies, falsehoods, random musings, misspellings, poor grammar, and gross misrepresentation, but for her personal vindictiveness and bias against people who cross her. She has made our client a "project" for several years because he represented Mr. Honig in the past against the founder of Biozone who connected with Ms. Buhl when he launched a campaign to discredit, its advisors and investors as a purported

---

[4] https://www.sec.gov/litigation/litreleases/2019/lr24431.htm
[5] "… the tiny biotech firm MabVax Therapeutics Holdings (MBVX), says that Honig forced it to hire Kesner and the Sichenzia Ross firm as a condition of his financing…" Excerpt, "The Lawyer at the Center of SEC Pump-and-Dump Case, Oct. 4, 2018)

3

"whistleblower", only later to withdraw his claims. She excitedly reported on a convicted felon's allegations that mentioned Mr. Honig[6] and was sued by Mr. Honig. Viewing Ms. Buhl as an investigative reporter is a joke as she cites anonymous sources, plants questions that go unanswered that are suggestive of malfeasance, uses open ended suggestions rather than facts or sources to plant her message, and retaliates against anyone who does not respond to her request to comment. Yet Barron's went all-in in the Stories and relied on Ms. Buhl's reporting as if it were from a source, applauding her and even copied her byline and theories defaming our client by repeating her story line.[7] As recently as March 2019, Ms. Buhl excitedly published copies of emails and blogged facts about alleged bags of cash and secret code words involving Mr. Honig only to be confronted with clear evidence that the emails were fabrications. Ms. Buhl grudgingly was forced to retract and admit she reported on secretly obtained fakes not facts.[8] Importantly, Ms. Buhl has repeatedly been sued for libel and slander. Thus, there is plenty of reason for her to be discounted as a credible source for a news organization like Barron's. Ms. Buhl hides from service of process with faked addresses and also is believed to have a romantic relationship with an executive of MGT, a company also sued by Mr. Honig and one of the three noted in the SEC case.

In reporting on this matter, Mr. Alpert publishes a video taken in the hospital emergency room with a false caption stating that Mr. Kesner ended a night of partying in a hospital. Publishing such videos is a clear violation of privacy law and may also violate federal HIPAA regulations. In point of fact, there was an incident in which several people fell ill after visiting a California restaurant and were back in their hotels before 9 PM after a brief emergency room visit. There are dozens of people who attended the dinner and witnessed the first responders and ambulance arrival around 7 PM.

Mr. Alpert seems to be connected to fake news reporting previously and serving the interests of illegal short sellers in the past[9]. The Internet reveals some interesting stories about his involvement in schemes to falsely report, benefit and receive payments from "short sellers", contained in testimony of Chinese stock promoters. Headlines herald "crack" use[10]. All would be newsworthy about a Barron's staff reporter in their own right. These allegations, uninvestigated by Barron's, are all the more telling when that same writer has lodged defamatory claims against a respected lawyer concerning matters in which he has clearly shown personal interest and bias and cast his opinion as news and fact. Barron's should need to go no further than to acknowledge these circumstances, Ms. Buhl's unreliability and allegations covering Mr. Alpert's opinions and bias in order to take immediate action, withdraw the Stories, remove the video, publicly apologize to Mr. Kesner and investigate Alpert and Buhl's connections.

---

[6] https://www.scribd.com/doc/313912773/Joe-Noel-DOJ-Plea-Agreement-June-2014

[7] As reported by Barron's in the September 10, 2018 Barron's piece: "The remarkable penny stock successes of Frost, Honig, and Brauser have also been the subject of dogged investigation by independent journalist Teri Buhl, who self-publishes her work and had to defend against two lawsuits filed by Honig over her stories, including a libel suit Honig dropped last year. "Reporting on this man is costly," Buhl wrote Saturday on her website."

[8] http://www.teribuhl.com/2018/11/20/that-honig-morgan-stanley-story/

[9] http://wallstreetonparade.com/2015/03/barrons-bill-alpert-theres-a-wealth-transfer-from-wall-street-to-the-little-guy/

[10] https://www.theblot.com/jon-carnes-crime-family-2-years-prison-crime-implicated-barrons-racists-leslie-norton-bill-alpert-7717059

4

Part II - Barron's Unbalanced Opinions As Fact Without Verification Or Research

As far as the content of the Stories, it is notable that many false statements published are taken from the one-sided narrative in a complaint filed against Mr. Kesner and his firm by MabVax, as noted above. Barron's fails to mention that MabVax's suit stems from disputed legal fees and that it owes the firm over $225,000. Barron's fails to reveal that the SEC's targets of its investigation (and the defendants in numerous lawsuits by investors) is the management of MabVax and **not** our client. Furthermore, Barron's entirely fails to report that management of MabVax have been and remain engaged in contentious warfare with investors to retain their managerial positions.

Extreme and salacious allegations are not uncommon in litigation, and Barron's disregards completely the claims, defenses, motivations and efforts by management to deflect onto others responsibility for their own potentially false SEC filings and reports, an SEC investigation and challenges to their positions.

Contrary to Barron's false and unbalanced reporting, our client actively pursued the formation of an independent special committee of the board of directors to investigate MabVax executives when the SEC subpoena was disclosed. Our client has seen the subpoena and confidential formal order of investigation to which it relates.

Part III - MabVax Management Efforts to Implicate Investors And Avoid Prosecution

On September 7, 2018, the SEC brought a complex action that charges certain investors who funded MabVax in an alleged multi-company, multi-party, multi-year conspiracy, with MabVax as but one of three entities involved. Barron's Story entitled "SEC Charges Against Philip Frost May be Just the Tip of the Iceberg" ties in yet other companies funded by Dr. Frost as if Barron's has obtained confidential information about government prosecution efforts involving further claims to be brought. Incredibly, Barron's inserts our client's picture in the Story from a photograph or video taken unknowingly in an emergency room with a libelous caption. **Mr. Kesner is not a party to the SEC action and other than false media reporting by Barron's and Teri Buhl, is not implicated in any wrongdoing alleged in the case**.

Noticeably missing in your reporting is every important fact concerning the illicit scheme foisted on the investors by management of MabVax to entrench themselves, secure yet more investment using false statements and misrepresentations, telling of falsehoods and half-truths to regulators, claiming all of their investors (67 of them) conspired as a group against them and their efforts to "tip" regulators to the activities of their investors to divert attention away from their own misdeeds. In cases where prosecutors seek to get a "big fish", they often seek to garner favorable testimony from others who they would otherwise charge. In the pending SEC case, both of the other companies charged by the SEC besides MabVax have named as defendants the persons in the positions of the CEO, CFO and other members of management. The SEC charged false reports were filed with the SEC and that these individuals violated federal securities laws, and allowed undisclosed "control" over the companies by the charged "group". Curiously absent from the SEC charges are **only** the MabVax executives.

Part IV - Special Committee Investigation Is Savaged as Independent Board Resigns – Counsel Crosses the Line to Defend Management It Had Been Engaged to Investigate For Special Committee

Once the special committee was formed, our client turned over files to the (supposedly) independent attorney who claimed to represent the special committee so that an investigation **of MabVax management** could be conducted. Counsel should there upon have reviewed the files and protected all privileged and confidential, attorney-client and work-product materials in order to defend its client from an SEC investigation, class action plaintiffs and derivative lawsuit claims. It would likely constitute malpractice to do otherwise. Counsel for a special committee should also be protecting the interests of shareholders, not managers trying to keep their jobs at all costs in order to not be charged by regulators. The special committee could have protected MabVax's interests from class and other plaintiffs and the SEC but instead, the resignation of each and every independent director followed shortly after the committee's formation by August 1, 2018. Management next set out and accused our client (and 67 other investors) of constituting a group and in the SEC filings filed by its long time securities counsel who served as co-counsel during the entire time of our client's engagement and approved SEC filings, alleged that all 67 of its long time investors could vote no more than 4.9% of the stock of the company together in any election of directors or other matter. This also could have been, but was not, reported on by Barron's, which chose instead to defame and disparage our client.

Part V – Mr. Kesner Invested Personally over $100,000 and Is a Likely Member of the Plaintiff Class In a Pending Federal Lawsuit

Barron's reporting also does not mention that Mr. Kesner personally invested $100,000 in the original 2014 financing, is a likely member of the class plaintiffs in a pending federal lawsuit in the Southern District of California, and was defrauded along with numerous other investors by MabVax management. Barron's does not state our client was swindled by management and how investors were thereafter misled into funding additional amounts.

Conclusion

With respect to specific statements in the Stories, Barron's has defamed our client, made false representations in furtherance of questionable motivations by its reporter and painted a grossly inaccurate picture or our client. The details of hiring by MabVax are false. The involvement of our client in any "pump-and-dump" activities is false. The graphic depiction of our client with a false caption and insertion into a Story related to claims of wrongdoing is false. The title of Barron's article proclaiming our client is the "center" of the universe described in SEC charges is false. Virtually nothing said about our client, the SEC investigation or the MabVax litigation is accurate.

Moreover, Barrons' reporting also disparages Equity Stock Transfer with false statements that any superficial research would reveal are incorrect. Barron's falsely reported Equity Stock Transfer is the transfer agent for all three companies in the SEC complaint. Contrary to Mr. Alpert's false reporting, Equity Stock Transfer has never been the transfer agent for either MabVax or MGT. Neither Mr. Kesner nor any of his family members have any control over Equity Stock Transfer. Mr. Kesner has complied with all SEC public reporting requirements

applicable to transfer agents by correctly reporting a debt owed, as well as being an initial co-founder of this independent entity that Mr. Alpert, using false statements previously made by Ms. Buhl, has also sought to destroy through his false reporting on Mr. Kesner. Furthermore, during the time in question, contrary to Barron's reporting, our client's firm did **not** represent MGT in matters related to its investments, as wrongly asserted in the Stories. MGT was previously represented by another firm, Gerston Savage, whose partners later joined Mr. Kesner's firm which thereupon substantially suspended representation of MGT when matters involving potential for adversity arose.

Should you not remove your Stories, video and publish an immediate and fulsome apology and provide compensation to our client our client intends to bring an action against Barron's for defamation. The lawsuit will identify that Barron's reporting completely fails to meet the basic ethical obligations for fact checking and balance which governs your professional obligations.

The Dow Jones code of ethics provides:

> *The central premise of this code is that Dow Jones' reputation for quality products and services, for business integrity, and for the independence and integrity of our publications, services, and products is the heart and soul of our enterprise. Put another way, it is an essential prerequisite for success in the news and information business that our customers believe us to be telling them the truth. If we are not telling them the truth – or even if they, for any valid reason, believe that we are not – then Dow Jones cannot prosper. Dow Jones will suffer, for example, if our customers cannot assume that: Our facts are accurate and fairly presented; Our analyses represent our best independent judgments rather than our preferences, or those of our sources, advertisers, or information providers; Our opinions represent only our own editorial philosophies; or There are no hidden agendas in any of our journalistic undertakings.*[11]

Barron's, a division of Dow Jones, has failed miserably to live up to its code.

The Stories have already caused Mr. Kesner tremendous harm and have interfered with, and threaten to damage if not destroy, many or all of Mr. Kesner's highly valuable and lucrative professional relationships. The claims about Mr. Kesner in the Stories are categorically false—he follows all applicable rules and laws and has never been named in any SEC court proceeding.

**The following statements in the Stories are false and defamatory:**

1. Title - "The Lawyer at the Center of SEC Pump-and-Dump Case"

---

[11] https://www.dowjones.com/code-conduct/

2. "Unmentioned in the SEC's case is how all three public companies in the alleged swindles used the same securities law firm and the same stock transfer agency."

3. "SEC filings over the past decade show that nearly two dozen companies backed by Honig, or other defendants in las month's SEC complaint, used securities lawyer Harvey Kesner, a 61 year old partner at the leading small-cap law firm Sichenzia Ross Ference, until he retired from the firm just before the SEC action"

4. "Those companies also happened to use Equity Stock Transfer, a New York outfit that SEC registrations show was financed and controlled by Kesner."

5. "Securities lawyers and transfer agents are essential gatekeepers under federal regulations meant to protect the investing public. But one of the three companies featured in the SECs New York case, the tiny biotech firm MabVax Therapeutics Holdings (MBVX), says that Honig forced it to hire Kesner and the Sichenzia Ross firm as a condition of his financing, according to a little-noted malpractice case that MabVax filed in a San Diego state court after the SEC case became public."

6. "The MabVax suit contends that Kesner and his law firm advanced the interests of Honig at the expense of MabVax,"

7. "The MabVax suit contends that Kesner and his law firm advanced the interests of Honig … deceiving the company and committing malpractice that led to its delisting from Nasdaq."

8. "Although MabVax had retained Kesner's law firm "to keep the company safe, … Kesner's firm instead "put MabVax in harm's way."

9. "Neither Kesner nor Equity Stock Transfer responded to Barron's requests for comment or in court filings.

10. "… he'd [Kesner] been with the Dallas firm Haynes and Boone until the firm terminated him in 2009."

11. "the biotech says that Honig and his associates forced MabVax to hire Kesner as part of a 2015 financing."

12. "he worked on at least five deals a year for Honig's investment group."

13. "it had found 22 other companies backed by Honig's group where "Sichenzia and Kesner have been inserted as counsel"".

14. "the advice it got from Kesner was secretly designed to serve clients such as Honig."

15. "Kesner tipped Honig off to a potential legal issue that weakened his control over the company"

16. "and then forced MabVax to issue $10 million worth of securities – for free – to Honig and his investment associates, who secretly included Kesner."

17. "Kesner's law firm inserted legal language in Honig's deals so that the investors could deny that they were acting as a controlling group."

18. "But doubts about the legitimacy of Kesner's techniques have since forced MabVax to disclaim four years worth of its previous SEC filings ... and caused Nasdaq delisting."

19. "The transfer agent for the public companies involved in the SEC case – and more than another dozen funded by Honig – was Equity Stock Transfer."

20. "A YouTube video of Honig, after a night of partying, has gone viral among stock traders since Friday's SEC complaint."

21. "Barry Honig & Harvey Kesner Esq. Enjoying the '14 Roth Capital Conference."

Barron's acts of publishing the Stories and the foregoing statements and photographs constitutes, among other claims, libel, false light invasion of privacy, intentional/negligent infliction of emotional distress and intentional/negligent interference with actual and prospective business relations.

In light of the foregoing, we specifically demand that Barron's:

1. Immediately and permanently remove the Stories in their entirety and cease and desist from publishing or republishing the Stories, cease and desist from publishing any future defamatory stories about Mr. Kesner, or alternatively, immediately and permanently remove all of the specific defamatory statements listed above, and publish a public and prominent retraction, correction and apology as to each of those enumerated statements, and cease and desist from publishing any future false and defamatory statements about my client;

2. Immediately provide this firm with the name and contact information for all unnamed sources for the Stories, and all associates who provided any assistance whatsoever to Mr. Alpert in connection with the Stories, so that this firm can serve such person(s) with an immediate cease and desist letter to stop the spread of the false and defamatory statements;

3. Immediately engage independent counsel and confirm to the undersigned such action has been taken, for full independent investigation of Mr. Alpert and his associates, sources, financial associations, bank and stock records, social and

9

business ties and motivations and refer such matter to the SEC and DOJ, as appropriate; and

4. Immediately preserve all physical and electronic documents, materials, communications and data in your possession, custody and/or control (including, without limitation, emails, text messages, instant messages (IMs), voicemail messages, photographs, audio recordings and video recordings, handwritten notes, electronic notes, websites, webpages and social media accounts and messages) that are or might be relevant or related in any way to any and all statements in the Stories, and the process of researching, writing, editing, publishing and distributing the Stories.

Please confirm in writing within five (5) days of receipt of this letter that the foregoing requests will be, and are being, complied with. Mr. Kesner reserves his rights to file an action which may result in Barron's being liable for substantial damages.

This letter is not intended, and should not be construed, as a complete expression of Mr. Kesner's factual or legal positions with respect to this matter. Nothing contained in or omitted from this letter is intended, and should not be construed, as a waiver, relinquishment, release or other limitation upon any legal or equitable claims, causes of action, rights and/or remedies available to my client, all of which are hereby expressly reserved.

We look forward to your immediate response to this letter.

Sincerely,

Milo Silberstein

cc: Steven S. Biss, Esq.
Almar Latour, Dow Jones Media Group, Executive Vice President and Publisher
David Pitofsky, News Corp., General Counsel
Dana Ritzcovan, News Corp., Exective Vice President and Chief Human Resources Officer