**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-61370-CIV-SMITH/VALLE

HARVEY J. KESNER,

      Plaintiff,

vs.

BARRON'S, INC., et al.,

      Defendants.

_____/

**DEFENDANT WILLIAM ALPERT'S MOTION TO DISMISS, OR IN THE**
**ALTERNATIVE, TO TRANSFER AND INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3), Defendant William Alpert ("Defendant" or "Alpert") moves to dismiss the Complaint of Plaintiff Harvey Kesner ("Plaintiff" or "Kesner") for lack of personal jurisdiction and improper venue.  In the alternative, Mr. Alpert moves pursuant to 28 U.S.C. 1404(a) to transfer this action to the District Court for the Southern District of New York ("SDNY").  In support, Defendant states as follows:

## INTRODUCTION

This Court lacks any meaningful connection to the allegations in Plaintiff's Complaint to warrant hauling a New York-based journalist, in his individual capacity, to Florida to defend Plaintiff's meritless allegations.[1]  Plaintiff's Complaint challenges statements made in a news article about his career as a New York attorney and his connection to an action filed by the Securities and Exchange Commission ("SEC") in New York.  The news article was researched and written by Mr. Alpert, a New York-based journalist, and published by a New York publication.  The only connection this case has to the Southern District of Florida is that shortly before the contested article was published, Plaintiff—a long-time New Jersey resident and New York attorney—moved to Florida.  This single, isolated connection to the forum is insufficient to establish that the Southern District of Florida is a proper venue for this action or to exercise personal jurisdiction over Mr. Alpert.  As an alternative to dismissing this action on those serious procedural grounds, Defendant requests that this case be transferred to the SDNY.

Applying the three separate but interrelated tests for personal jurisdiction, venue and transfer, it is clear that Plaintiff's action cannot be maintained in this forum.  Under well-established precedent, there must be a greater connection between this action and the forum aside from Plaintiff's mere residence in this state to justify bringing claims against a non-resident, individual Defendant in this Court.  Because any connection to Florida is too tenuous, this Court should dismiss Mr. Alpert from this action for lack of personal jurisdiction or improper venue, or in the alternative, transfer this case to a proper venue, the SDNY.

## FACTUAL BACKGROUND

Contrary to the allegations in the Complaint, *Barron's* is not a separate legal entity. (Declaration of Bob Rose ("Rose Decl.") at ¶ 2.)  Rather, *Barron's* is an investment publication of Dow Jones & Company, Inc. ("Dow Jones").  (*Id.*)  Dow Jones is headquartered in New York

---

[1] If the Court decides not to dismiss Mr. Alpert from this case, Mr. Alpert will join in Dow Jones's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

City.  (*Id*.)  Defendant Mr. Alpert is employed by Dow Jones as a Senior Writer for *Barron's*. (Declaration of William Alpert ("Alpert Decl.") at ¶ 1.)  Mr. Alpert lives in New Jersey and works out of Dow Jones's New York City office.  (*Id*. at ¶ 2.)  The only Dow Jones employee that works for the *Barron's* news department in Florida is a part-time copy editor who works out of his home and who did not have any involvement with the Article.  (Rose Decl. at ¶ 10.)

This case stems from Dow Jones's publication of an October 4, 2018 article in *Barron's* titled "The Lawyer at the Center of the SEC Pump-and-Dump Case" (the "Article").[2]  The Article was researched and written by Mr. Alpert out of New York.  (Alpert Decl. at ¶ 3.)  Mr. Alpert did not travel to Florida in connection with his investigation for the Article.  (*Id*.)  Mr. Alpert had no communications with anyone in Florida for the Article.[3]  At the time the Article was researched and written, Mr. Alpert understood that Plaintiff had been a long-time resident of New Jersey and was aware that Plaintiff may own property in Florida.  (Id. at ¶ 5.)  Mr. Alpert attempted to contact Plaintiff in New Jersey and through others in New York, but never received a response from Plaintiff; Mr. Alpert did not see a Florida phone number for Plaintiff.  (*Id*. at ¶¶ 4-5.)  Two *Barron's* editors, David Schutt and Dan Hirschhorn, worked on the Article out of Dow Jones's New York office.  (Rose Decl. at ¶ 6.)  The Article was uploaded from New York to the *Barron's* website, which is hosted by Amazon servers in Virginia and Oregon.  (*Id*. at ¶ 3.) The Article was not published in *Barron's* print magazine.  (*Id*.)

The Article itself makes no mention of Florida.  The Article reports on an SEC action filed in the SDNY and a related malpractice suit filed against Plaintiff and his former firm in California state court (which was later removed to federal court in California).  Further, the Article discusses Plaintiff's representation of various clients involved in the SEC action while he was a named partner at the New York firm of Sichenzia Ross Ference Kesner LLP.  (Compl. at ¶ 12.)  No Florida sources are cited in the Article.

---

[2] Defendants Dow Jones and Bill Alpert are not associated with the third Defendant, Teri Buhl, or her news publication.  In any event, according to Plaintiff's Complaint, Ms. Buhl is a citizen of New York.

[3] Mr. Alpert sent an email seeking comments from one of the defendants in the SEC action, Mr. Honig, who is a Florida resident (and to his New York attorneys), but did not receive a response. (Alpert Decl. at ¶ 3.)

## ARGUMENT

### I. MR. ALPERT IS NOT SUBJECT TO PERSONAL JURISDICTION IN THE SOUTHERN DISTRICT OF FLORIDA

#### A. Each Defendant Must Be Assessed Individually Under The Well-Established Framework For Establishing Personal Jurisdiction.

The Complaint alleges generally that Defendants "transact substantial business in Florida and committed multiple acts of defamation and intentional torts, in whole or part, in Florida." (Compl. at ¶ 19.)  This blanket, conclusory allegation improperly lumps all Defendants into one category rather than addressing personal jurisdiction with respect to each Defendant.  *See Celorio v. Google Inc.,* 872 F. Supp. 2d 1327, 1331 (N.D. Fla. 2012), *report and recommendation adopted*, No. 1:11CV79-SPM/GRJ, 2012 WL 1795213 (N.D. Fla. May 17, 2012) ("Each defendant's contacts with the forum State must be assessed individually rather than simply viewing them collectively."); *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011) ("In assessing personal jurisdiction, each defendant's contacts with the forum state must be weighed individually.").

Here, Mr. Alpert is not subject to personal jurisdiction individually in this Court under the well-established framework for the exercise of personal jurisdiction.  "A federal court sitting in diversity undertakes a two-step inquiry to determine whether personal jurisdiction exists." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018), *cert. denied sub nom. Waite v. Union Carbide Corp.*, 139 S. Ct. 1384 (2019).  First, the Court must determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. *Id.*  Second, even if the long-arm statute is applicable, the "the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment." *Id.*

Mr. Alpert acknowledges that the Supreme Court of Florida's decision in *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010) (decided on certified question from Eleventh Circuit) has interpreted the Florida long arm statute broadly in the defamation context.  However, even if the long-arm is met, "the exercise of jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment." *Waite*, 901 F.3d at 1312.  And in fact, in that same defamation case, *Internet Sols. Corp. v. Marshall*, 2010 WL 11617855 (M.D. Fla. September 29, 2010), following remand from the Eleventh Circuit, 611 F.3d 1368 (11th Cir. 2010), the district court found that while Florida's long-arm statute was met, the plaintiff failed to establish that personal jurisdiction over the defendant was proper under the federal due process standard, and

therefore dismissed for lack of personal jurisdiction.  Likewise here, regardless of whether the Florida long-arm statute applies, the exercise of personal jurisdiction by this Court over Mr. Alpert is simply not compatible with due process.

> **B.    The Exercise of Personal Jurisdiction Over Mr. Alpert by this Court Is Not Compatible With Due Process.**

The Complaint pleads that "[t]he Defendants are subject to general and specific personal jurisdiction in Florida," but again, this conclusory allegation fails to separate out each Defendant. Plaintiff's empty assertion notwithstanding, there can be no argument that Mr. Alpert is subject to general jurisdiction in Florida.  And to determine whether the exercise of specific personal jurisdiction is compatible with due process, the Eleventh Circuit requires that each of the following elements is met:

> (1) the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefit of the forum state's laws; and (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019).  Under each of these prongs, it is clear that the exercise of personal jurisdiction over Mr. Alpert in his individual capacity would offend due process.

> **1.    Plaintiff's Claims Do Not "Arise Out of or Relate To" Mr. Alpert's Contacts with Florida.**

Mr. Alpert has zero contacts with Florida out of which this claim may arise or relate.  He did not travel to Florida for the Article, nor did he have communications with anyone in Florida in writing the Article.  (Alpert Decl. at ¶ 3.)  He sent an email to one Florida resident (and his New York lawyers) for comment, but did not receive a response.  (*Id*.)  While the Article was published by Dow Jones on *Barron's* website and is accessible in Florida, Mr. Alpert did not make the ultimate decision to publish the Article and through what medium.  (Alpert Decl. at ¶ 6; Rose Decl. at ¶ 7.)  Because "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), Dow Jones's contacts with Florida, through its *Barron's* website or otherwise, cannot be imputed to Mr. Alpert.  *See e.g. Verizon*, 810 F. Supp. 2d at 1331 ("This Court will not consider the actions of other defendants in this case as the actions of the IMG Defendants for the purposes of conducting a jurisdictional analysis."); *Basile v. Prometheus Glob. Media, LLC*, No. 15-CV-10138, 2016 WL 2987004, at

*4 (N.D. Ill. May 24, 2016) (finding no personal jurisdiction over reporter and editor where "there is nothing to indicate that either had any personal involvement with distributing or circulating copies of the article in Illinois"). Thus, this first prong of the due process analysis is not met.

### 2. Mr. Alpert Did Not "Purposefully Avail" Himself of the Privilege of Conducting Activities in Florida.

Under both the Supreme Court's controlling decision in *Walden v. Fiore*, 571 U.S. 277 (2014) and prior Eleventh Circuit precedent, Mr. Alpert cannot be found to have purposefully availed himself of the privilege of conducting activities in Florida.

#### i. Personal Jurisdiction Over Mr. Alpert Is Improper Based on the Supreme Court's *Walden* Decision.

The Supreme Court's 2014 decision in *Walden v. Fiore* forecloses a finding of personal jurisdiction over Mr. Alpert in Florida under the due process clause. In finding that a Georgia defendant did not have sufficient minimum contacts with Nevada to be subject to personal jurisdiction there, the Court in *Walden* held that, "*the plaintiff cannot be the only link between the defendant and the forum*. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 571 U.S at 285 (emphasis added).

The *Walden* Court clarified its decades-old decision in *Calder v. Jones*, 465 U.S. 783 (1984), which dealt with actress Shirley Jones's defamation claims against the National Enquirer, Inc., a Florida corporation, and the paper's reporter and editor, who were Florida residents, all of whom challenged the California state court's exercise of jurisdiction over them. *Id*. at 785-786. In *Calder*, the Supreme Court found jurisdiction existed in California under the "effects test" reasoning that: "*California is the focal point both of the story* and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California." *Id*. at 789 (emphasis added). As to the reporter and editor individually, the Court found that "their intentional, and allegedly tortious, actions were expressly aimed at California. . . . And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. at 789-90. When reexamined in *Walden*, the Court explained that *Calder* was based on "the injury to the plaintiff's reputation in the estimation of the California

5

public . . . *combined with the various facts that gave the article a California focus*[.]"  571 U.S. at 288 (emphasis added).

*Walden's* holding that "the plaintiff cannot be the only link between the defendant and the forum" is dispositive in this case.  There is no other link between Mr. Alpert and Florida other than Plaintiff.  Significantly, in *Walden*, even though the defendant "allegedly directed his conduct at plaintiffs *whom he knew had Nevada connections*," the Supreme Court held that "did not create sufficient contacts with Nevada" to sustain jurisdiction.  571 U.S at 289 (emphasis added).

Further, as clarified in *Walden*, the critical combination of alleged harm to the Plaintiff in California with additional "facts that gave the article a California focus" are utterly absent here. In *Calder*, California was the focal point of not only the harm suffered, but also *the story itself*.

> The allegedly libelous story concerned the *California activities* of a California resident.  It impugned the professionalism of an entertainer whose *television career was centered in California.*  The article was drawn from *California sources*, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.

*Calder*, 465. U.S. at 788-89 (emphasis added).  The same cannot remotely be said of Florida in this case.

The Article makes no mention of Florida.  Rather, it was drawn from non-Florida sources and describes the activities of Plaintiff while working as a New York attorney (including as a named partner in a New York firm).  (Compl. at ¶ 12.)  The Article cites to and relies on proceedings by the SEC in New York and by Plaintiff himself in New York.  *See* Fugate Declaration and Exhibits thereto.  The Article focuses on the SEC's securities fraud action in New York and the fact, documented in SEC filings, that Plaintiff and/or the firm of which he was a named partner, was counsel of record for all three publicly traded companies that were the subject of that action.  In no sense was Florida the "focal point" of the article.  *See Internet Solutions*, 2010 WL 11617855, at *5 (even where the website post noted "three Florida addresses associated with [plaintiff]," personal jurisdiction not found where "article contains no other connection to Florida.").

In addition to *Walden* itself, the facts here are analogous to several post-*Walden* decisions in which courts have found personal jurisdiction did not exist.[4] For example, in *Sovereign Offshore Servs., LLC v. Shames*, the court held that plaintiffs' location in Florida was insufficient to establish personal jurisdiction over a foreign defendant where "Plaintiffs have not established that Defendant directed the two blog posts at Florida consumers in order to exploit a Florida market" and "Florida is not the 'focal point' of the posts." No. 17-CV-80172, 2017 WL at *3-4 (S.D. Fla. Aug. 3, 2017). The same is true here. There can be no serious claim that Florida is the "focal point" of the Article or that the Article was in any way directed specifically at Florida. It simply is not. Absent these types of critical facts, under *Walden* there can be no personal jurisdiction over Mr. Alpert.[5]

In another similar case declining to exercise jurisdiction over an individual reporter based on *Walden*, the District of New Jersey found that, although the Plaintiff was a resident of New Jersey, "[t]he Article was written in Illinois and D.C. and at no point did Defendant conduct any investigation or conduct any interviews in New Jersey. Nothing about the Article specifically targeted readers in New Jersey. The topic of the Article was not New Jersey specific. In fact, the Article cited to another court proceeding in the Second Circuit." *Triestman v. Turkheimer*, No. 217-cv-08187 (D. N.J. 2018), ECF No. 18, Report and Recommendation at 5; *id.*, ECF No. 19, Order Adopting Report and Recommendation. The facts here are nearly identical. The Article was written in New York and Mr. Alpert did not rely on any source from Florida. The

---

[4] *See also e.g. Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018) ("The district court thought that Ariel Capital had set out to injure Ariel Investments, knowing that it is located in Illinois. That's exactly the sort of allegation the Justices deemed inadequate in *Walden*"); *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018) ("Even though [defendant's] email communications happened to affect [plaintiff] while he was at the Port of Houston, this single effect is not enough to confer specific jurisdiction over [defendant]."); *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1281 (10th Cir. 2016) ("[D]efendants' suit-related conduct did not create any meaningful contacts with Colorado itself, and the fact that Anzures was affected in Colorado (because he resides there) is insufficient to authorize personal jurisdiction over defendants.").

[5] *See also RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1241 (M.D. Fla. 2019) (allegations "that Defendant's actions were intended to cause harm to Plaintiff in Florida" were held insufficient under *Walden* because "Defendant's actions had no connection to Florida aside from the harm they caused to Plaintiff in Florida"); *Duncanson v. Wine & Canvas Dev., LLC*, No. 614CV704ORL40KRS, 2015 WL 12844947, at *5 (M.D. Fla. Sept. 25, 2015), *amended in part*, 2015 WL 12838361 (M.D. Fla. Nov. 20, 2015) ("There is no explanation for how this event was directed at Florida other than that it simply harmed a Florida resident.").

topic of the Article was not Florida specific, and in fact referenced other proceedings in New York and California. Under these analogous post-*Walden* decisions, there simply is no basis for personal jurisdiction over Mr. Alpert on an individual basis.

        ii.      **Personal Jurisdiction Is Also Inappropriate Under the Eleventh Circuit's Own Precedent.**

Prior to *Walden*, courts in this Circuit relied mainly on two Eleventh Circuit decisions on personal jurisdiction in intentional tort cases—*Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) and *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013). Following *Walden*, some district courts have suggested that the *Licciardello* and *Louis Vuitton* may no longer be good law. *See Hitchcock v. Scipione*, No. 8:13-CV-2581-T-23TBM, 2014 WL 12623406, at *1, n.2 (M.D. Fla. May 30, 2014) ("After *Walden v. Fiore*, 134 S. Ct. 1115 (2014), *Licciardello* and other Eleventh Circuit opinions . . . are in doubt."); *Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 11202324, at *6, n.3 (S.D. Fla. Apr. 3, 2015) ("The Court is cognizant of D&G's contention that *Licciardello* and *Louis Vuitton* and their progeny have been called into question by *Walden v. Fiore*"). But even under *Licciardello* and *Louis Vuitton*, there is no basis for the exercise of personal jurisdiction over Mr. Alpert here.

In *Licciardello*, the Eleventh Circuit described the *Calder* "effects test" for personal jurisdiction as requiring that "a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." 544 F.3d at 1286 (citations omitted). In *Licciardello*, the defendant allegedly infringed the plaintiff's trademarked name and picture by posting them on his website and falsely implying that plaintiff endorsed defendant. 544 F.3d at 1282-83. The plaintiff and defendant had a prior contractual relationship that terminated before the alleged infringement occurred. *Id*. Applying the effects test, the *Licciardello* court found that it could appropriately exercise personal jurisdiction over the foreign defendant "because his intentional conduct in his state of residence was *calculated* to cause injury to [plaintiff] in Florida." *Id*. at 1288 (emphasis added).

Here, it cannot be said that Mr. Alpert's actions in writing a story about a New York attorney and the representations of the New York law firm in which he was a named partner were "*calculated to cause injury to [plaintiff] in Florida*." *Id*. at 1288 (emphasis added). Rather, this case is more analogous to *Internet Solutions*, 2010 WL 11617855, *5, where on remand the court found jurisdiction did not comport with due process, reasoning: "it is not alleged that readers were drawn to the article because of [plaintiff's] connection with Florida" or that

"Florida residents were the target audience or that [plaintiff] suffered a particular harm to its business generated from Florida."  Indeed, "personal jurisdiction cannot be based solely on the ability of a Florida resident to access the website."  *Id.*

Nor does *Louis Vuitton* support personal jurisdiction over Mr. Alpert.  Applying the traditional minimum contacts analysis in a trademark infringement action, the court there held that a foreign defendant had sufficient minimum contacts to be subject to jurisdiction in Florida because his website was accessible in Florida and the defendant sold and distributed the allegedly infringing product "through his website to Florida consumers—*and the cause of action here derives directly from those contacts*."  736 F.3d at 1358 (emphasis in original).  In so holding, *Louis Vuitton* relied on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984), which found that a publisher's "regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine."

Mr. Alpert's conduct as an individual reporter here is distinguishable from that of the defendants in *Keeton* and *Louis Vuitton*, who were, respectively, the *publisher* of the magazine and the *owner and operator* of the website selling the infringing goods.  Again, Dow Jones's publication of the Article cannot be imputed to Mr. Alpert as an individual.  *See e.g., Celorio*, 872 F. Supp. 2d at 1333 ("Personal jurisdiction must be established separately for each Defendant, and while Google has an agent in Florida and does business in Florida, jurisdiction for On Demand Books cannot be established based on Google's contacts with the forum.").[6]

Additionally, the cause of action in *Louis Vuitton*, trademark infringement, as the court emphasized, was "derived from" defendant's contacts with Florida, his sale of goods to Florida consumers.  736 F.3d at 1358.  In contrast, as discussed above, Plaintiff's claims are not derived from *Mr. Alpert's contacts* with Florida.  Again, Mr. Alpert simply does not have sufficient minimum contacts for the exercise of personal jurisdiction.

---

[6] *Compare Basile,* 2016 WL 2987004, at *4 (N.D. Ill. May 24, 2016) (finding no personal jurisdiction over reporters where "there is nothing to indicate that either had any personal involvement with distributing or circulating copies of the article in Illinois") *with Guberev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1161 n.3 (S.D. Fla. 2017) (exercising personal jurisdiction over Editor-in-Chief who "made the ultimate decision to publish the Article").

### 3. Asserting Jurisdiction Over Mr. Alpert Would Offend Fair Play and Substantial Justice.

The final due process consideration is whether exercise of personal jurisdiction over the defendant would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted). In this case, because Mr. Alpert lacks sufficient minimum contacts with the state of Florida, as discussed above, "this Court cannot say that the present case is 'one of those rare cases' in which notions of fair play and substantial justice may, in and of themselves, establish personal jurisdiction over a nonresident defendant." *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.*, 896 F. Supp. 1190, 1196–97 (M.D. Fla. 1995); *see also Volt, LLC v. Volt Lighting Grp. LLC*, 369 F. Supp. 3d 1241, 1249 (M.D. Fla. 2019) ("But because VLG lacks minimum contacts with Florida under Calder's 'effects test,' determining whether the burden on VLG outweighs the other considerations is unnecessary."); *Internet Solutions*, 2010 WL 11617855, at *5. Put simply, the exercise of personal jurisdiction over Mr. Alpert would offend fair play and substantial justice. As a result, Mr. Alpert should be dismissed from this action, or as discussed below in Section III, this action should be transferred to the SDNY.

## II.   THE SOUTHERN DISTRICT OF FLORIDA IS AN IMPROPER VENUE[7]

This action should also be dismissed under Rule 12(b)(3) because it was brought in an improper venue. Pursuant to the general venue statute an action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which *a substantial part* of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391 (emphasis added).

Plaintiff relies on subsection (b)(2), alleging that "a substantial part of the events giving rise to the claims" occurred in this district because "Defendants published and republished defamatory statements to a wide audience that includes securities attorneys and other persons

---

[7] Defendant Dow Jones joins in Sections II and III seeking dismissal on the grounds of improper venue, or in the alternative, transfer to the Southern District of New York.

who reside within the Fort Lauderdale Division. Defendants caused substantial harm to Kesner's personal and professional reputations in Florida." (Compl. at ¶ 20.) These conclusory allegations fail to establish that the Southern District of Florida is a proper venue. *See BPI Sports, LLC v. PHD Fitness LLC*, No. 14-60069-CIV, 2014 WL 11706458, at *4 (S.D. Fla. June 13, 2014) ("Plaintiff's conclusory assertion that it has suffered harm in this district is insufficient to establish that venue is proper here" for his defamation action).

### A.   Plaintiff's Professional Reputation and the Brunt of Any Harm Occurred in New York, Not Florida.

Plaintiff's bald conclusions that he suffered harm in Florida are contradicted by his admissions elsewhere in the Complaint. Specifically, while Plaintiff alleges damage to his "professional reputation" in Florida, the truth -- established by the allegations in his own Complaint -- is that his professional reputation is centered in New York. As he pleads, his reputation as a securities lawyer was based in New York -- he is licensed to practice law in New York, practiced his entire career in New York, and for many years was *a named* partner in a high profile securities law firm in New York, Sichenzia Ross Ference Kesner LLP. (*See* Compl. at ¶ 12.) So when the Complaint claims the Article "injured Kesner in his business and profession as a securities attorney, causing Kesner to lose clients, lose standing in his profession, [and] suffer a permanent disruption in his successful practice" (*id*. at ¶ 5) -- all of that occurred, if at all, in New York.

Plaintiff cannot seriously claim he has a professional reputation in Florida since he is not licensed to practice law in Florida.[8] *Frey v. Minter*, No. 8:17-CV-147-T-30JSS, 2017 WL 2172195, at *3 (M.D. Fla. May 17, 2017) (rejecting plaintiff's argument that he was injured in Florida, finding that "the bulk of the injury they caused to Plaintiff's career would have occurred in Georgia, where Plaintiff is licensed to practice law.") Additionally, Plaintiff apparently was already retired at the time the Article was published, discrediting his allegations of lost clients and disruption of practice generally, let alone in Florida. Plaintiff's allegations simply do not support a finding of venue in this district.

---

[8] *See MabVax Therapeutics Holdings, Inc. v. Sichenzia Ross Ference LLP et al*., No. 3:18-cv-02494 (S.D. Cal.), ECF No. 28-2, Decl. of Kesner at ¶ 8 ("I have never been licensed to practice law in any state other than New York, the District of Columbia, and Pennsylvania (of which latter states are inactive)."). Indeed, a search for "Kesner" on the Florida Bar website returns only one hit, a Kelly Lynn Kesner.

### B.   All Substantial Events Giving Rise to the Claim Occurred in New York, Not Florida.

Not only did any injury to Plaintiff substantially occur in New York, but a substantial part of all the events giving rise to this claim occurred in New York, not Florida.  Section 1391 is "meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) (citations omitted); *see also Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc*., 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009) (finding plaintiff's bases for venue "inapposite" where plaintiff "focuses largely on its own activities and location, but the proper focus of the venue inquiry is on the relevant activities of the Defendants").

All of Defendants' activities occurred in New York.  The Article was researched and written by Defendant Mr. Alpert while working for Dow Jones in New York.  (Alpert Decl. at ¶ 3.)  The Article focused on Plaintiff's firm's representation of three clients while he was a named partner at the New York law firm of Sichenzia Ross Ference Kesner LLP, and reported on the SEC lawsuit filed in New York federal court involving those clients.  *See* Exhibit A to Fugate Declaration.  Under this standard, the SDNY, not the Southern District of Florida, is the proper venue for this action.

### III.   TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK IS WARRANTED

Whether or not this Court finds that it can properly exercise personal jurisdiction over Mr. Alpert,[9] the entirety of this action should be transferred to the SDNY.  The Court has discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or

---

[9] If the Court finds that it does not have personal jurisdiction over Mr. Alpert, failing to transfer the case could result in two separate actions—one in this Court against Dow Jones and one in New York against Mr. Alpert.  The risk of this type of duplicative litigation weighs in favor of transfer.  *See Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc*., 896 F. Supp. 2d 1049, 1068 (D. Kan. 2012) ("The Court finds that the Court's interest in avoiding duplicative and piecemeal litigation strongly favors transfer of this matter to Delaware where all parties, including CCI may be sued."); *Reiffin v. Microsoft Corp*., 104 F. Supp. 2d 48, 58 (D.D.C. 2000) ("In summary, the compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments) warrants transfer of venue under these circumstances.").

division to which all parties have consented." 28 U.S.C. § 1404(a).[10]  Transfer to the SDNY is warranted here given the convenience of the witnesses, including the ability to compel key witnesses, the lack of connection between the Article and the State of Florida and the interests of justice.

A.      **The Southern District of New York Is a Proper Venue.**

In order to transfer an action under Section 1404, the Court must determine that the alternative venue is one in which the action could have originally been brought.  "[A]n action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." *Carucel Investments, L.P. v. Novatel Wireless, Inc*., 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016). The district court for the Southern District of New York meets each of these requirements.

First, like this Court, the SDNY has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and there is at least $75,000 in controversy.  Second, venue is proper in the SDNY under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in that district.  The Article at issue was investigated and written by Mr. Alpert *in New York*, Dow Jones made the decision to publish the Article from its office *in New York*, and the Article concerns Plaintiff's legal representations while he was *a named partner at a New York law firm*.  *See Montgomery v. Risen*, No. 15-20782-CIV, 2016 WL 4119865, at *1 (S.D. Fla. Jan. 26, 2016) (finding District of Columbia a proper venue under 1391(b)(2) where defendant conducted his newsgathering and interviewed sources in D.C.). Third, Mr. Alpert and Dow Jones are both amenable to process in the SDNY.  Thus, that Court is a proper venue to which this action may be transferred.

B.      **The Southern District of New York is More Convenient for the Parties and Witnesses and Transfer Will Serve the Interests of Justice.**

In determining whether transfer is warranted, courts in the Eleventh Circuit consider nine private and public interest factors.  *Carucel Investments, L.P*., 157 F. Supp. 3d at 1224.  The factors are discussed individually below.  Because a majority of the factors favor transfer, including, importantly, the convenience of the parties and witnesses, this Court should transfer this case to the SDNY.

---

[10] The Court may also transfer under 28 U.S.C. 1406(a) if it finds that the Southern District of Florida is an improper venue.

### 1.   The Southern District of New York is more convenient for witnesses

"The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC,* No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (citations omitted).  The majority of witnesses in this case reside or work in or around the New York City area.  If this case proceeds to the trial stage, Defendants will assert various defenses including but not limited to truth of the matters reported in the Article and a lack of actual malice.  Defendants may need to call Plaintiff's former colleagues at the New York law firm Sichenzia Ross Ference Kesner to testify as to Plaintiff's representation of the companies referenced in the Article.  Equity Stock Transfer, which was financed and controlled by Plaintiff, and is referenced in the Article, also is located in New York City.  Defendants may also seek the testimony of SEC personnel involved in the SEC lawsuit referenced in the Article; based on the SEC Complaint, the SEC enforcement attorneys involved in the matter are based out of the New York Regional Office.

Plaintiff also pleads in his Complaint that *Barron's* and Mr. Alpert "acted with actual malice and reckless disregard for the truth."  (Compl. at ¶ 6.)  As Plaintiff implicitly concedes, he is a public figure[11] in connection with the subject of Defendants' reporting, and as such must meet the constitutional standard of actual malice in order to prevail on his defamation and other claims based on publication of the Article.  *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964).  Separately, regardless of whether he is found to be a public figure, Plaintiff also must establish actual malice to recover presumed or punitive damages, in a case against a media defendant involving a matter of public concern.  *Phila. Newsp., Inc. v. Hepps,* 475 U.S. 767, 774-75 (1986) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348-50 (1974)).  And under New York law, where an "article is arguably within the sphere of legitimate public concern," even

---

[11] A person may become a public figure for a limited range of issues if he "voluntarily injects himself or is drawn into a particular public controversy[.]"  *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974); *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1496 (11th Cir. 1988).  Plaintiff falls squarely within this rule.  He claims to be a high-profile, "extremely successful" securities lawyer who is a "frequent speaker" on the topics of his expertise (Compl. at ¶ 12); and as counsel for the three companies that the SEC alleges were the subject of stock manipulation -- by a group of investors with whom Plaintiff has been connected -- Plaintiff was drawn into the controversy surrounding the SEC's widely publicized action against those investors, and subsequently, the MabVax malpractice lawsuit against him and his former firm.

private figure plaintiffs "must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer*, 38 N.Y.2d 196, 199 (1975).

Thus, even if Plaintiff's Complaint could survive dismissal on the fair index, fair report privilege and other grounds raised by Dow Jones's motion to dismiss (and it cannot as a matter of law), Plaintiff would still have the heavy burden of establishing actual malice in this case. The determination of whether defendants acted with reckless disregard is subjective and requires the plaintiff to show that "'the defendant in fact entertained serious doubts as to the truth of his publication.'" *Silvester*, 839 F.2d at 1498 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Under this standard, the best evidence of Defendants' lack of actual malice is the state of mind of those involved in writing and publishing the Article. *See, e.g., N.Y. Times*, 376 U.S. at 287 ("the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication"). And here, Mr. Alpert and the two *Barron's* editors involved with the article, Mr. Schutt and Mr. Hirschhorn, are all located in New York. (Rose Decl. at ¶ 6.)

Other than Plaintiff himself—who has significant ties to the New York area, having worked in New York City and resided nearby for decades—none of Defendants' anticipated witnesses are in Florida. In addition to the New York witnesses listed above, Defendants may need to call representatives from MabVax Therapeutics Holdings, Inc. ("MabVax"), the former client that sued Plaintiff and his law firm for malpractice. According to MabVax's lawsuit, it is a Delaware corporation with its principal place of business in California. New York would be no more inconvenient for those witnesses, assuming they will testify freely, than Florida.[12]

### 2.     The relevant documents and sources of proof are in New York

The documents relating to Mr. Alpert's and Dow Jones's research and development of the Article are located in New York. Presumably, documents relating to Plaintiff's representation of clients are retained by his former law firm in New York. Materials relating to the SEC action are also likely to be in New York. Defendants are unaware of any documents

---

[12] The same is true of the other small public companies alluded to in the Article that were represented by Kesner and/or his New York law firm and were allegedly the subject of the pump-and-dump schemes, as none are located in Florida.

located in Florida.  This factor weighs in favor of transfer to the SDNY.  *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1339 (M.D. Fla. 2011) ("The documents necessary to try this lawsuit are found in the District of Colorado. . . .Thus, the Court determines that this factor militates in favor of transfer to Colorado.").

### 3.   New York is more convenient for Defendants and is not burdensome for Plaintiff

As set forth in Section I, Defendant Mr. Alpert has no relevant contacts with the State of Florida and subjecting him to an action in Florida would be unfairly burdensome.  Defendant Dow Jones also would be burdened by having to send multiple employees to Florida to defend this action.  While Dow Jones does not contest personal jurisdiction in Florida, all of the relevant *Barron's* personnel would need to travel from New York for this trial.

In contrast, Plaintiff would not be burdened by a transfer to New York.  In fact, six months before Plaintiff filed this action, he attempted to transfer the malpractice action filed against him by his former client MabVax from the Southern District of California to the SDNY.  *See MabVax Therapeutics Holdings, Inc. v. Sichenzia Ross Ference LLP et al.*, No. 3:18-cv-02494 (S.D. Cal.), ECF No. 28, Kesner's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2), and Alternatively Motion to Transfer Venue, 28 U.S.C. 1404(a).  At no point did Plaintiff contend that defending an action in the SDNY would be burdensome for him.  Indeed, Plaintiff originally hired a New York law firm to send a demand letter to Dow Jones in this case.  (See Exhibit A to Complaint.)  Plaintiff will clearly face no hardship in having to pursue this case in New York.  Thus, this factor weighs in favor of transfer.  *See Carucel Investments, L.P.,* 157 F. Supp. 3d at 1228 ("Similarly, here, this factor weighs heavily in favor of transfer, particularly because Plaintiff has ties to [transferee court] the Southern District of California as well.").

### 4.   The locus of operative facts is New York, not Florida

Plaintiff cannot seriously contend that the locus of operative facts for this action is Florida.  The Article at issue makes no mention of Florida, but rather focuses on Plaintiff's legal work while a named partner at a New York law firm (Compl. at ¶ 12) and reports on an SEC action filed in New York (*id*. at ¶ 21).  The Article was researched and written from Dow Jones's office in New York (Alpert Decl. at ¶3) and was uploaded from New York to the *Barron's* website, hosted by Amazon Web Services on servers in Virginia and Oregon (Rose Decl. at ¶ 3).  In sum, none of the acts complained of in the Complaint occurred in Florida.  Further, any alleged harm suffered by Plaintiff to his legal career would have been felt in New York where

Plaintiff is a licensed attorney.  (Compl. at ¶ 12.)  The dissemination of the allegedly defamatory Article in Florida via the *Barron's* website is not sufficient to establish a locus of operative facts here.  *Game Controller Tech. LLC v. Sony Computer Entm't Am. LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014) (rejecting argument in patent infringement case that "*sale* of accused products in this District is sufficient to establish a locus of operative facts in the Southern District of Florida").  This factor "distinctly favors" transfer.  *See Delorenzo v. HP Enter. Servs., LLC*, 79 F. Supp. 3d 1277, 1282 (M.D. Fla. 2015).

### 5.     Most witnesses are subject to compulsory process in New York

"Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of the non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue."  *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004).  In *Ramsey*, the court found that the key witnesses regarding liability in a defamation action were "those that can shed light on the issues of falsity of the Report, and the negligence or malice of the Defendant in making the allegedly defamatory statement."  *Id*. at 1357 ("When considering a transfer of venue, the key witnesses are those which have information regarding the liability of Defendant").  The same type of liability witnesses will be key in this case, if this case were to proceed to discovery and trial.

As discussed above, at pp. 14-15, Defendants have four sets of potential witnesses in this case, all of whom are located in or around the New York area: (1) Dow Jones's employees for *Barron's*; (2) Plaintiff's former partners at Sichenzia Ross; (3) employees of Equity Stock Transfer; and (4) SEC Division of Enforcement personnel.  While Defendants recognize that Dow Jones would be in a position to compel the appearance of its *Barron's* employee-witnesses, it is not guaranteed that the relevant employees will remain in Dow Jones's employ through the time of trial.  *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1264 (S.D. Fla. 2013) (acknowledging that defendant must use court's subpoena power to compel appearance of former employees).  Additionally, Defendants will need to use the Court's subpoena power to compel witnesses from Sichenzia Ross, Equity Stock Transfer and the SEC, as none of those witnesses are within the territorial subpoena power of this Court.  Thus, transfer to SDNY is necessary to give Defendants an opportunity to present their case if this case were to proceed to trial.

### 6.      The relative means of the parties is neutral

Plaintiff has the means to litigate the case in the SDNY as evidenced by his attempt to transfer his malpractice suit to that court and his engagement of a New York lawyer to send Dow Jones a demand letter.  This factor is therefore neutral.

### 7.      The SDNY is more familiar with New York defamation law

As detailed in Dow Jones's contemporaneously filed Motion to Dismiss Pursuant to Rule 12(b)(6), New York law will govern this action.  While Defendant is confident that this Court is more than capable of applying New York law, a judge in the SDNY does have an "advantage". *Delorenzo*, 79 F. Supp. 3d at 1281 ("A district judge in the District of Columbia indisputably enjoys an advantage over the Middle District of Florida in deciding a claim based on the law of the District of Columbia.").  This factor too favors transfer.

### 8.      Little weight should be given to Plaintiff's choice of forum

The deference generally paid to a Plaintiff's choice of forum should be given little weight in this case.  "[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."  *Osgood*, 981 F. Supp. 2d at 1267.  As detailed above, the "locus of operative facts" in this action occurred in New York, not Florida.  This factor therefore favors transfer.  *See Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F. Supp. 2d 1271, 1276 (S.D. Fla. 2011) ("Because the claims raised in Motorola's complaint only appear to have a limited connection with this District, only minimal deference will be given to Plaintiff's choice of forum.");  *Greiser v. Drinkard*, No. 18-61126-CIV, 2018 WL 7287083, at *5 (S.D. Fla. Nov. 16, 2018) ("Because the Court has already found that the 'locus of operative facts' is in Pennsylvania rather than in Florida, the weight accorded Plaintiff's choice of forum is entitled to less deference and does not override the factors weighing in favor of transfer.").

### 9.      Mere trial efficiency cannot overcome the interests of justice that favor transfer

Mr. Alpert acknowledges that cases generally reach trial faster in this Court than in the SDNY, but that fact alone cannot prevent transfer.  As detailed above, the other factors, including the convenience of parties and witnesses, favor transfer to the SDNY.  Thus, "the mere possibility that trial will be held sooner in the original court does not justify denial of transfer when it is otherwise supported by the convenience of the parties and the witnesses."  *Delorenzo*,

79 F. Supp. 3d at 1284 (quoting *Moore's Federal Practice*, Vol. 17 § 111.13[1][k] (3d ed. 2014)).

## <u>CONCLUSION</u>

Based on the foregoing, in accordance with due process considerations and in the interest of justice, Defendant William Alpert requests that this Court dismiss him from this action for lack of personal jurisdiction over him or improper venue, or in the alternative, transfer the entirety of the action to the United States District Court for the Southern District of New York.

## <u>REQUEST FOR HEARING</u>

Pursuant to Local Rule 7.1(b)(2), Defendant respectfully requests oral argument on this Motion and estimates that a total of one hour will be required.

Dated: August 26, 2019

Respectfully submitted,

/s/ *Natalie J. Spears*
Natalie J. Spears (*pro hac vice*)
Gregory R. Naron (*pro hac vice*)
Jacqueline A. Giannini (*pro hac vice*)
DENTONS US LLP
233 S. Wacker Dr.
Chicago, IL 60606
Telephone: (312) 876-8000
natalie.spears@dentons.com
gregory.naron@dentons.com
jacqui.giannini@dentons.com

/s/ *Rachel E. Fugate*
Rachel E. Fugate (Florida Bar. No. 144029)
Kendall O. Pfeifer (Florida Bar No. 105445)
SHULLMAN FUGATE PLLC
2101 Vista Parkway, Suite 4006
West Palm Beach, FL 33411
Telephone: (561) 429-3619
rfugate@shullmanfugate.com
kpfeifer@shullmanfugate.com

*Attorneys for Defendant William Alpert*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 26, 2019, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list and by U.S. Mail on Defendant Teri Buhl, 1725 York Avenue #30G, New York, NY 10128

/s/ Rachel E. Fugate

Rachel E. Fugate
Florida Bar No. 0144029