**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-61370-CIV-SMITH/VALLE

HARVEY J. KESNER,

    Plaintiff,

vs.

BARRON'S, INC., et al.,

    Defendants.

_____/

**DEFENDANT DOW JONES'S REPLY MEMORANDUM IN SUPPORT OF MOTION
TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiff Kesner's Opposition ("Opp.") to Dow Jones's Motion to Dismiss ("Mot.") is more notable for what it does *not* say than what it does.  Plaintiff does not and cannot dispute his involvement with individuals and companies related to a 2018 "pump-and-dump" enforcement action by the SEC (the "SEC Action"), as documented on the face of official SEC filings and public records of judicial proceedings.  Plaintiff *literally does not address* any of these public records and undisputed facts. The October 4, 2018, *Barron's* Article written by Defendant William Alpert and published by Dow Jones (the "Article," ECF No. 44-1) accurately and truthfully reports those public record facts.  Recognizing that the Article's reporting is not itself actionable, Plaintiff's Opposition confirms that his Amended Complaint (the "FAC") rests all but exclusively on claiming that the Article's headline ("The Lawyer at the Center of SEC Pump-and-Dump Case") was somehow false and defamatory.  Under governing law, to which Plaintiff also has *literally no response*, Plaintiff cannot divorce the headline from the text of the undisputed, accurate and legally protected reporting on public records in the Article to concoct a defamation claim.

It is black-letter defamation law that a headline must be read in context of the entire article—particularly where, as here, the headline does not identify Plaintiff. (Mot. at 13.)  When so read, the body of the *Barron's* Article utterly refutes the defamatory reading of the headline Plaintiff proffers.  Far from accusing Plaintiff of being "involved in securities fraud" as a defendant in the SEC Action (FAC at ¶¶ 20, 48-49; Opp. at 1-2), the Article *explicitly reports that his firm's role is "unmentioned" in the SEC's Complaint.* (ECF No. 44-1.)  Lest readers have any doubts, the Article links to the SEC Complaint so they can see for themselves that Plaintiff is not named. (*Id.*)

The Article further explains that Plaintiff's "centrality" to the SEC Action lies in his indisputable links to the companies that were the subject of that Action, and to dozens of other companies in which the pump-and-dump defendants (*i.e.*, Barry Honig and his investor group) had an interest.  *These ties, established in public SEC filings, stand completely unchallenged*:

- *All three* publicly traded companies whose stock was the subject of the SEC Action used Sichenzia Ross Ference Kesner, the law firm in which Plaintiff was a named partner—with two of them listing Kesner specifically on SEC filings.  (ECF No. 45 and 45-2.)[1]

- Two of those companies used a stock transfer company financed and controlled by Plaintiff, Equity Stock Transfer ("EST").  (ECF Nos. 45 and 45-3, 45-4.)

---

[1] Tellingly, the Sichenzia firm that once bore Plaintiff's name is nowhere mentioned in his Opposition; nevertheless, Plaintiff acknowledges, as he must, that he was once a "partner in a law firm that represented one or more companies referred to in the SEC Action. . . ." (Opp. at 14 n. 5.)

- *Over two dozen companies backed by Honig or other defendants in the SEC Action used Plaintiff as their lawyer*, and many of them also used EST.  (ECF Nos. 45 and 45-5, 45-6.)

The Article also accurately reported on the public record litigation filed by one of the companies that was the subject of the SEC's pump-and-dump case, MabVax Therapeutics.  The MabVax suit alleges Kesner breached his fiduciary duty as MabVax's securities lawyer by favoring Honig's interests over the company's, and by representing MabVax in its dealings with the SEC.  (*See* ECF No. 44-3.)  Not only was Plaintiff closely tied to the SEC Action defendants through numerous representations documented in public SEC filings—*he represented MabVax in the investigation that led to the SEC Action*.  (*See id.* at ¶¶ 3, 8, 80-82, 90.)

Further, notwithstanding his hollow pronouncement that he "emphatically contests the accuracy of the Barron's Article" (Opp. at 4), Plaintiff *does not identify anything* reported in the Article that he claims is untrue.  He *does not address, much less dispute*, the public record facts in the SEC filings, and he *does not even mention* the MabVax complaint.  Plaintiff wants the Court to ignore those public records too, because they doom his claims.  But Plaintiff has no answer to the binding authority supporting judicial notice of the public records at issue here.  (*See* Mot. at 7-9; *Nix v. ESPN, Inc.*, 772 F. App'x 807, 812 (11th Cir. 2019) (affirming Rule 12(b)(6) dismissal).)

Read in context of the Article as a whole, including the undisputed public record facts in the text of the Article, the headline's statement that Plaintiff was "at the center" of the SEC's pump-and-dump case does not accuse Plaintiff of securities fraud and cannot be actionable.  As Dow Jones's motion demonstrated, as a matter of applicable New York law, the headline is a non-actionable "fair index" of the Article's accurate reporting on the above undisputed public record facts.  (Mot. at 12-15.)  The headline, like the Article itself, also is protected by the fair report privilege as a matter of law.  Both the MabVax Complaint and the SEC filings are publicly filed government records.  Defendant cannot, consistent with the First Amendment, be punished for accurately reporting on such public information.  (*Id.* at 15-17.)  Moreover, under both the fair index and fair report protections, even attention-grabbing headlines are protected.  *See, e.g., Test Masters Educ. Servs, Inc. v. NYP Holdings,* 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009).

Remarkably, Plaintiff does not address *any* of the substantive authority cited in Dow Jones's Motion that requires dismissal on these multiple grounds.  *Not a single case*.  Instead, Plaintiff offers a repetition of conclusory complaint allegations, hollow rhetoric and a potpourri of inapposite case law from around the country.  Having failed to respond to the authority set forth in Dow Jones's motion, Plaintiff should be deemed to have conceded its applicability.

### A. Plaintiff Cannot Dispute Controlling Authority Holding It Is Proper for the Court to Judicially Notice Public Records Submitted on This Motion

The public records submitted with Dow Jones's Motion are properly considered via judicial notice on a Rule 12(b)(6) motion. Reciting in a footnote that the "scope of review on a motion to dismiss under Rule 12(b)(6)" is "limited to the four corners of the complaint" Plaintiff errantly contends that "the Court should immediately treat [it] as one for summary judgment". (Opp. at 4 n. 3.) Plaintiff's footnote pitch is wide of the mark. He completely ignores the law of this Circuit holding that matters of public record may be the subject of judicial notice on a Rule 12(b)(6) motion without the motion being converted into a summary judgment motion. *Universal Express, Inc. v. U.S. S.E.C.,* 177 F. App'x 52, 53 (11th Cir. 2006).

Pursuant to this settled rule, public records—such as the SEC filings and MabVax pleadings—are matters of which the court can take judicial notice on a motion to dismiss. (*See* Mot. at 7-9, citing, *e.g., U.S. ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 811 n. 4 (11th Cir. 2015) (judicial notice of court records "at the Rule 12(b)(6) stage" is proper); *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1297 n. 15 (11th Cir. 2011) (SEC filings).)

Indeed, the Eleventh Circuit recently affirmed the grant of a Rule 12(b)(6) dismissal in a defamation case asserting the fair report privilege, in which the defendant relied on public records outside the complaint—just like here: "When the parties submit allegedly defamatory information to a court, that court 'may determine as a matter of law whether allegedly defamatory publications are 'fair and true' reports of official proceedings.'" *Nix*, 772 F. App'x at 812 (citation omitted). In *Nix* the "information" the court considered from "the parties" was not just the complaint but defendant's submission of public record material outside the complaint, *i.e.,* the complaint and other filings in another lawsuit that was reported on in the complained of article. *See Nix v. ESPN, Inc.*, No. 1:18-cv-22208-UU, 2018 WL 8802885, *6 (S.D. Fla. Aug. 30, 2018), *aff'd*, 772 F. App'x 807 (11th Cir. 2019); Exhs. on Mot. Dism., *Nix v. ESPN, Inc.*, No. 1:18-cv-22208-UU, ECF Nos. 10-4, 10-7, 10-8, 10-9.[2] Plaintiff's choice to ignore the public record here is fatal.

---

[2] Consistent with *Nix*, courts in this Circuit routinely take judicial notice of public records on Rule 12(b)(6) motions, including in defamation cases, "without converting the motion to dismiss into a motion for summary judgment." *Johnson v. Darnell*, 2018 WL 3672759, at *1, n. 2 (N.D. Fla. July 13, 2018); *Coral Ridge Ministries Media v. Amazon.com*, 2019 WL 4547064, at *5, n. 8 (M.D. Ala. Sept. 19, 2019) (judicial notice of FBI manual); *Nassar v. Nassar*, 2017 WL 26859, at *2, n. 2 (M.D. Fla. Jan. 3, 2017) (judicial notice of prior state court proceedings).

### B.     Plaintiff's Attempt to Avoid Application of New York Law Is Contrary to Law and the Facts Underlying This Complaint

Plaintiff acknowledges that, "[b]ecause there is a true conflict, the Court must conduct a choice-of-law analysis," and the "relevant issue here is an affirmative defense to defamation" (Opp. at 6)—namely the fair index and fair report defamation defenses (as Plaintiff notes, the fair index defense does not appear to exist under Florida law, *see id.* at 6 n. 4).

The parties agree that in applying the Restatement's "most significant relationship" test the Court considers contacts that "include": (a) where the injury occurred, (b) where the conduct causing the injury occurred, (c) the "domicil, residence, nationality, place of incorporation and place of business of the parties", and (d) where the parties' "relationship, if any, . . . is centered." Restatement (2nd) of Conflict of Laws § 145(2).  Here, the place the conduct occurred and location of parties favor New York law because the events reported (*e.g.,* the SEC Action and Plaintiff's law practice) were centered in New York, as were the reporting and decision to publish.

Every court in this Circuit to address this same choice of law issue on similar facts has held New York law applies.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (applying New York law where article "was published in New York, regarding an event that took place in New York, and that allegedly caused harm to [plaintiff's] business interests in New York," and "[all defendants] are domiciled in New York"); *Miller v. Gizmodo Media Group*, 2019 WL 1790248, *5-6 (S.D. Fla. Apr. 24, 2019) (New York "has a 'more substantial relationship with the conduct at issue here,' because Defendants' conduct took place in New York"); *Gubarev v. BuzzFeed, Inc.*, No. 0:17-cv-60426-UU, ECF No. 171, at 8-10 (S.D. Fla. June 5, 2018) (same).[3]

Plaintiff's argument comes down to the allegation that he has lived in Florida since 2016 and ipso facto claims injury in Florida.  (Opp. at 7-9.)  However, Plaintiff ignores the Eleventh Circuit's admonition that, with respect to the place of injury factor, "a plaintiff may suffer greater injury in another state if the defamatory matter 'related to an activity of the plaintiff that is

---

[3] Attempting to shore up his weak assertion that "the conduct giving rise to this action" occurred "in part in Florida," Plaintiff falsely asserts that "print copies" of the Article "were delivered to Florida" (Opp. at 8); in fact, the Article was only published online and did not appear in print. (ECF No. 41, ¶ 3.)  Plaintiff also "fudges the facts" (to use his lingo) in representing that "as recently as May 2019" Defendants "continue to publish defamatory statements implying that Kesner sought sanctuary in Florida because he was trying to avoid an 'SEC fine.'"  (Opp. at 9.)  The *Barron's* Article says no such thing; indeed, there has been no coverage of Plaintiff in *Barron's*, by Alpert or any other reporter, since the October 2018 Article. As he does throughout the FAC's improper shotgun pleading, Plaintiff misleadingly conflates articles by the other defendant in the case, Teri Buhl.  (Mot. at 3, n.2.)

4

principally located in [that] state'". *Nix*, 772 F. App'x at 810 (quoting Rest. § 150 com. (e)). That is certainly true here—the alleged defamation relates specifically to Plaintiff's activity in New York. His professional reputation was centered in New York, where he is licensed and practiced law from 1982 to 2018, including as "a [named] partner in [a] New York law firm." (FAC at ¶ 37.) While Plaintiff emphasizes that he's had a home in Florida since 2016, he neglects to mention that he was still practicing law *in New York as of August 2018*—just before the Article was published.

Plaintiff asserts that "unlike the plaintiffs in *Nix* and *Gubarev*, Kesner is a citizen of Florida," as if that is somehow dispositive of the matter. (Opp. at 9.) Of course, it is not: as the district court noted in *Nix*, "even if Plaintiff was a resident of Florida, this factor would not outweigh the others." *Nix*, 2018 WL 8802885, at *4, n. 1. Indeed, in *Michel, supra*, the Eleventh Circuit applied New York law even though the plaintiff resided in Florida, because, as here, New York was indisputably where the dispute's center of gravity was located. 816 F.3d at 694.

Importantly also, courts consider the Restatement § 145 contacts in light of the principles in Restatement § 6, *e.g.,* (1) the interest of other states in the determination of the particular issue, (2) the basic policies underlying the particular field of law, and (3) certainty, predictability and uniformity of result. *See Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 n.1 (Fla. 1980).

Plaintiff's assertion that "Florida has a significant interest in protecting its citizens from defamation" (Opp. at 9) disregards New York's countervailing "strong interest in encouraging unfettered expression by protecting certain types of speech within its borders," by providing defenses such as fair index and fair report "meant to protect speakers" operating in that state. *Miller*, 2019 WL 1790248, at *5-6 (citations omitted); *accord Gubarev, supra* ("New York has a strong interest determining the applicability of" fair report privilege). And applying "New York defamation law to a New York publication encourages 'certainty, predictability and uniformity of result'". *Michel v. NYP Holdings, Inc.,* 2015 WL 1285309, at *3 (S.D. Fla. Mar. 4, 2015).

### C.    Plaintiff Does Not Address the New York Defamation Law Principles That Bar a Defamation Claim Based On This Article's Headline

Plaintiff's opposition brief failed to address, and should by all rights be deemed to have waived any challenge to, the grounds for dismissal under New York law.[4] In addition, as noted throughout Dow Jones's Motion, and again here, Florida authority also supports dismissal.

---

[4] "When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned." *GolTV, Inc. v. Fox Sports Latin America Ltd.*, 277 F. Supp. 3d 1301, 1311, n. 7 (S.D. Fla. 2017) (citing numerous cases).

5

*Fair Index.*  The headline is, under New York law, a non-actionable "fair index" of the Article itself; this is a question of law for the court.  *Kamalian v. Reader's Digest Ass'n, Inc.*, 29 A.D.3d 527, 528 (2d Dep't 2006) (ordering dismissal).  Critically, in making this determination, "the entire content of the [publication] must be construed together."  *Cole Fischer Rogow, Inc. v Carl Ally, Inc.*, 29 A.D.2d 423, 426 (1st Dep't 1968), *aff'd*, 25 N.Y.2d 943 (1969).[5]

Read in context as it must be, the headline is a fair and accurate description of the facts established by the publicly-filed SEC records:  Plaintiff's firm was counsel for the three companies that were the subject of the SEC Action (ECF Nos. 45 and 45-1, 45-2); his stock transfer agency was retained by two of them (Nos. 45-3, 45-4); and his connection to the Honig investor group was not limited to these companies—he was the lawyer for dozens of companies backed by the Honig group (No. 45-5).  (*See also* Tables summarizing the Exhibits.)  These public record facts are unrebutted.

As a matter of law, reporting on all these publicly established ties and connections under the headline "The Lawyer at the Center of the SEC Pump-and-Dump Case" is not actionable.  Plaintiff is without question in the middle—at the center—of the constellation of investors and companies implicated in the SEC Action, and there is absolutely nothing inaccurate or unfair about so stating.  The fair index defense provides important speech protections, and, as shown in Dow Jones's motion, characterizations far less "fair" than the headline at issue here have consistently been held not actionable.  (*See* Mot. at 12-15, citing, *e.g., Test Masters Educ. Servs., Inc.*, 603 F. Supp. 2d at 589 (it is clear that "[a] newspaper need not choose the most delicate word available in constructing its headline; it is permitted some drama in grabbing its reader's attention, so long as the headline remains a fair index of what is accurately reported below").)  Plaintiff does not cite, let alone address or distinguish, any of these cases.

Plaintiff's sole reference to New York defamation law comes in the footnote where he notes that the fair index defense has no analogue in Florida law.  (Opp. at 6 n. 4.)  He cites *Schermerhorn v. Rosenberg*, 426 N.Y.S.2d 274 (App. Div. 1980) in arguing that the headline "fails to track the substance of the article about the SEC Action." (*Id.*)  Plaintiff is flat wrong, for a couple of reasons.

First, the headline in *Schermerhorn* used the plaintiff's name.  Here in contrast, the headline *does not identify Plaintiff*, does not say that the "Lawyer" has committed any wrongdoing, and

---

[5]  Likewise under Florida law, headlines cannot be divorced from an article's content. *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) ("Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines").

6

does not affirmatively state in what sense the "Lawyer" is at the "Center" of the SEC case. "There is nothing in the headline naming or identifying any person," and "[r]eading the headline alone no one is defamed." *Trudeau v. Plattsburgh Publ'g Co.*, 11 A.D.2d 852 (3d Dep't 1960).

Second, since "a headline that does not directly name the plaintiff is not independently actionable" the "full text of the article" must be considered, *Triano v. Gannett Satellite Info. Network, Inc.*, 2010 WL 3932334, at *4-5 (S.D.N.Y. Sept. 29, 2010)—as is the case generally in applying the fair index defense. *Cole Fischer*, 29 A.D.2d at 426. And as shown in Dow Jones's Motion (pp. 12-15), the *Barron's* Article refutes Plaintiff's reading of the headline as accusing him of being "involved" in the SEC's securities fraud case. Plaintiff claims the headline is unfair because "in truth, Kesner is not mentioned anywhere in the SEC Action" (Opp. at 6, n. 4)— completely ignoring that, "in truth," the Article *not only expressly points out that Plaintiff's firm was "unmentioned" in the SEC Complaint, but supplies a hyperlink to the SEC Complaint itself*, which is treated as part of the Article's essential context. (Mot. at 13-15, citing cases.)

Indeed, even where a headline is *on its face untrue*, the New York courts have held it is non-actionable if the text explains and dispels the alleged defamatory meaning. *See, e.g., Triano*, 2010 WL 3932334 at *5 ("even if headline was literally false, the full context of the article contradicted the headline and was substantially true"). *A fortiori*, using the phrase "at the center" cannot be defamatory in the context of the facts reported in the Article as a whole, which not only dispel the proffered defamatory meaning but explain exactly what is meant by "at the center."[6]

***Fair Report.*** Because the headline summarizes the Article itself, which in turn is based on public records (the SEC filings as well as the MabVax Complaint), it is also protected by New York's fair report privilege, which "provide[s] broad protection to news accounts of judicial or other official proceedings." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2009). As with the fair index defense, the headline must be read together with the Article, and is protected where, as here, it is a "fair and true headnote" of the Article's reporting of public records. (*See* Mot. at 15-17.)

Plaintiff repeats his mistaken contention that the headline is not "fair or substantially accurate" because "Kesner was not even mentioned" in the SEC Complaint. (Opp. at 11.) In

---

[6] Plaintiff's passing reference to "defamation by implication" (Opp. at 12) adds nothing. The implication Plaintiff draws from the Article -- that he is being accused of securities fraud -- is negated by the facts set forth in the Article. *See Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 148 (D.D.C. 2017) (article "specifically includes facts that negate the implications that Deripaska conjures up"); Mot. at 14, n.5 (discussing cases dismissing defamation by implication claims).

"[c]omparing the headline" with "the allegations in the complaint filed in the SEC Action" (*id.*), Plaintiff again leaves out the necessary context of the Article text, which accurately states that the SEC Complaint does not mention Plaintiff or his firm, and links to the SEC Complaint so readers can see that for themselves. There are thus no "[d]iscrepancies" in describing the SEC Complaint that would "prevent the fair report privilege from operating." (*Id.* at 10.)

And, of course, Plaintiff *simply ignores all the other public records*—the SEC filings and MabVax Complaint—on which the Article reports. (*See* ECF Nos. 41-1 to 41-5.) They too are covered by the fair report privilege. Both the Article and headline fairly abridge those records; and "[t]o the extent" Plaintiff contends that "the headline could be misleading to the reader, for the purposes of section 74, any ambiguities and questions would have been resolved by perusing the article." *Idema v. Wager*, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000). Plaintiff does not address, and thus concedes, both the undisputed facts and the case law, requiring dismissal.

While declining to engage with any of the authority cited by Dow Jones, Plaintiff reaches back to 1904 for Lord Campbell's commentary on the fair report privilege, opining that "report and comment—should be kept separate. And all sensational headings to reports should be avoided." (Opp. at 10, quoting *Dorr v. U.S.,* 195 U.S. 138, 152-153 (1904), quoting Newall on Defamation, ch. 19, § 153.) Suffice it to say, the law has progressed since Lord Campbell's time, and New York courts routinely dismiss claims based on more colorful or eye-catching headlines than the headline at issue here. (*See* Mot. at 17, citing*, e.g., Idema, supra*; *St. Louis v. NYP Holdings, Inc.*, No. 156522/2016, 2017 WL 887255, *2 (Sup. Ct. N.Y. Cty. Feb. 6, 2017) ("Marsh's headline is unfortunate, sensationalist and drafted simply to garner attention. But the headline and the article, when considered together as one document, can only be characterized as a fair and true report").)[7]

Plaintiff also cites *Butowsky v. Folkenflik*, 2019 WL 2518833 (E.D. Tex. Apr. 17, 2019), *adopted*, 2019 WL 3712026 (Aug. 7, 2019) (Opp. at 4-5) as somehow relevant here, even though that case applied Texas (not New York) law. Actual malice defeats the fair report privilege under Texas law, and "the Court agree[d], at this stage in the proceedings, Plaintiff has pleaded sufficient factual allegations to plausibly show actual malice." 2019 WL 3712026 at *9. New York's fair report privilege is *not* defeated by actual malice, *see* Mot. at 15. Nor is Florida's,

---

[7] In Florida too, "[p]rotection of the privilege is not lost, for example, by colorful language. . . ." *Folta v. N.Y. Times Co.*, 2019 WL 1486776, at *4 (N.D. Fla. Feb. 27, 2019); *Alan v. Palm Beach Newsp., Inc.*, 973 So. 2d 1177, 1180 (Fla. 4th DCA 2008) (report privileged even though it painted plaintiff in a negative light and was phrased in a way to catch its readership's attention).

*e.g., Jamason v. Palm Beach Newsp.,* Inc., 450 So. 2d 1130, 1133 (Fla. 4th DCA 1984).

***Protected Opinion.*** As Plaintiff points out, even where statements are not fair report, "[o]ften such comments may be justified on another ground. . . ." (Opp. at 10 (citation omitted).) Here, in addition to the foregoing grounds for dismissal, the Court could alternatively find the headline's loose and figurative phraseology "at the center" to be unverifiable protected opinion, *i.e.,* where statements "may mean different things to different people," they "[are] not capable of being proven true or false because of [their] subjective, relative meaning[s]." *Mirage Ent'mnt, Inc. v. FEG Entretenimientos SA*, 326 F. Supp. 3d 26, 37 (S.D.N.Y. 2018); *see* Mot. at 17-18.

If the Court were to look at the headline alone, there is "no objective standard" for assessing whether and to what degree Plaintiff was at the "center" of the SEC case. *Mirage*, 326 F. Supp. 3d at 37. Again, the "lawyer" could be "central" for any number of reasons. And when read in the context of the full Article, the alleged defamatory meaning is not only refuted, but the headline's characterization can be considered pure opinion based on disclosed facts. (Mot. at 18; Opp. at 12 ("Pure opinion" based on disclosed facts "protected under the First Amendment").)

**D. The Other Allegedly Defamatory Statements Are Not Actionable Either**

Plaintiff's brief confirms that, aside from the headline, he claims only two other statements in the Article are defamatory. (Opp. at 14-15, FAC ¶ 20 & n. 4.) Neither are.

*First,* contrary to what Plaintiff argues, his FAC does not allege, and the Article neither states nor implies, that Plaintiff was terminated "for cause" by Haynes and Boone. (Opp. at 15.) It simply states—consistent with the words used in the suit *Plaintiff himself* filed against his former law firm—that he was "terminated". (ECF No. 44-4.) Inexcusably, Plaintiff totally ignores his lawsuit allegations, the report of which is squarely protected by the fair report privilege.

*Second*, Plaintiff cannot transform the general observation that "Securities lawyers and transfer agents are essential gatekeepers under federal regulations meant to protect the investing public" into a libel of him. (Opp. at 14.). In *Chau v. Lewis*, "unflattering comment[s] made about CDO managers" in a book were not "personal libelous accusation[s] concerning [plaintiff] simply because" he was "a CDO manager who appears as a central representative character in" that book. 935 F. Supp. 2d 644, 664 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014). Likewise, the "gatekeeper" statement fails to "meet the 'of and concerning' requirement" of defamation. *Id.* Also, the statement nowhere says that Plaintiff (or anyone else) "failed" in the role of gatekeeper. And even if the Court indulged Plaintiff's pretense that the statement is both about him and said he "failed," it would be protected as opinion based on disclosed facts and a fair report of the public

9

record allegations in the MabVax Action.  (*See* Mot. at 16-17.)

### E. The FAC's Meritless Tag-Along Tort Claims Must Be Dismissed

Confronted with the hornbook principle that duplicative tort claims based on the same underlying facts as a defamation claim must be dismissed (Mot. at 19-20), Plaintiff dissembles, representing that he "alleges more than simply dissemination of false statements" (Opp. at 15). But Plaintiff cites to no such phantom allegations, because there are none. Counts II-IV are based on exactly the same set of operative facts as Count I for defamation. Moreover, the point Plaintiff cannot get around is that all of his tag along tort claims "seek damages only for injury to reputation." *Chao v. Mt. Sinai Hosp.,* 476 F. App'x 892, 895 (2d Cir. 2012). They are in substance defamation claims and cannot be used to evade defenses, like the fair report privilege.

As for the FAC's new baseless claim of a purported "conspiracy" among the Defendants (Count V), Plaintiff again barrels past the law, in both New York and Florida, holding that there is no "freestanding claim" for "conspiracy to defame," and that if the defamation claim fails, so does the "conspiracy" claim. (Mot. at 20.) *See Ovadia v. Bloom,* 756 So. 2d 137, 140 (Fla. 3d DCA 2000). Plaintiff cites *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061 (S.D. Fla. 2014) but there the defamation claim withstood summary judgment, and so the conspiracy claim did too.

Here, even if legally cognizable, Plaintiff's conclusory "conspiracy" allegations (FAC at ¶ 92) do not withstand a motion to dismiss.  (*See* Mot. at 20.)  Notably, the facts in *Carroll* that Plaintiff quotes went far beyond anything remotely alleged here, *e.g.,* in *Carroll* the alleged conspirators "Carruthers [an investor] and Davis [a reporter] had a long standing, established relationship, whereby Carruthers would serve as a source for insider financial information; Carruthers collaborated closely with Davis on the publication of the [a]rticle; [and] Davis knew of [Carruthers's employer's] financial interest in [subject of article]. . ." 2014 WL 5474061 at *16.

No similar facts plausibly alleging Ms. Buhl, Mr. Alpert, and Dow Jones "formed an agreement to defame" (Opp. at 17) are pleaded here (nor could they be in good faith consistent with Rule 11).  The fact that news outlets report on the same topic and refer to or compliment each others' work does not a conspiracy make.  To the contrary, it is precisely the kind of mere "parallel conduct [that] does not suggest conspiracy." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Plaintiffs cite no facts from which a meeting of the minds could be inferred. Simply alleging that the defendants published defamatory articles at the same time is not enough to state concerted action." *Friends of Falun Gong v. Pacific Cultural Enterp., Inc.,* 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003).

In sum, the FAC fails as a matter of law.  Dismissal with prejudice is in order.

Dated: October 21, 2019

    Respectfully submitted,

/s/ *Natalie J. Spears*  
Natalie J. Spears (*pro hac vice*)  
Gregory R. Naron (*pro hac vice*)  
Jacqueline A. Giannini (*pro hac vice*)  
DENTONS US LLP  
233 S. Wacker Dr.  
Chicago, IL 60606  
Telephone: (312) 876-8000  
natalie.spears@dentons.com  
gregory.naron@dentons.com  
jacqui.giannini@dentons.com  

/s/ *Rachel E. Fugate*  
Rachel E. Fugate (Florida Bar. No. 144029)  
Kendall O. Pfeifer (Florida Bar No. 105445)  
SHULLMAN FUGATE PLLC  
2101 Vista Parkway, Suite 4006  
West Palm Beach, FL 33411  
Telephone: (561) 429-3619  
rfugate@shullmanfugate.com  
kpfeifer@shullmanfugate.com  
*Attorneys for Defendant Dow Jones & Company, Inc.*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on October 21, 2019, a true and correct copy of the foregoing was served by CM/ECF on all counsel or parties of record on the service list and on Defendant Teri Buhl by email.

                                                /s/ *Rachel E. Fugate*
                                                Rachel E. Fugate
                                                Florida Bar No. 0144029